

# SUPREME COURT OF MISSOURI
## en banc

MISSOURI STATE CONFERENCE    )
OF THE NATIONAL ASSOCIATION  )
FOR THE ADVANCEMENT OF     )
COLORED PEOPLE, ET AL.,        )
                                   )
        Appellants,          )
                                   )

*Opinion issued October 9, 2020*

v.                                 )        No. SC98744
                                 )
STATE OF MISSOURI, ET AL.,     )
                                 )
        Respondents.       )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### The Honorable Jon E. Beetem, Judge

**PER CURIAM**

The Missouri State Conference of the National Association for the Advancement of Colored People, the League of Women Voters of Missouri, Meredith Langlitz, and Javier A. Del Villar ("Appellants") appeal the circuit court's judgment in favor of the State of Missouri and other respondents (the "State") for both declaratory judgment and injunctive relief. This case involves concerns about registered Missouri voters' ability to vote amidst the ongoing public health crisis caused by the COVID-19 pandemic. While the legislature greatly expanded voting options in Missouri for 2020 elections due to the pandemic, it put in place certain limitations on the newly created mail-in voting system. One of those

limitations—that absentee and mail-in ballot envelopes be notarized for certain voters—is the subject of this appeal. Due to the transmissibility of COVID-19 through person-to-person contact, Appellants seek injunctive and declaratory relief that allows all Missouri voters to vote by mail without having their signatures on their ballot envelopes acknowledged[1] by a notary or other official authorized by law to administer oaths. The circuit court denied their request for relief, and Appellants appeal from that judgment. Because Appellants' request for relief is not supported or warranted by Missouri law, the circuit court's judgment is affirmed.[2]

## Background

Appellants originated the underlying action in April 2020 seeking declaratory and injunctive relief. The State filed a motion to dismiss, arguing Appellants failed to state a claim on which relief could be granted. The circuit court sustained the State's motion, and Appellants appealed the dismissal. While the appeal was pending before this Court, the General Assembly passed and the governor signed Senate Bill No. 631.

---

[1] "Acknowledge," as used in this opinion, describes the act of a notary or other officer acknowledging that the person voting by absentee ballot or mail-in-ballot subscribed and swore to the statement on the ballot envelope, as required by section 115.291.1 (for certain absentee ballots) and section 115.302 (for mail-in-ballots), RSMo Supp. 2020.

[2] Respondents argue the Missouri Chapter of the NAACP and the Missouri League of Women Voters do not satisfy the requirements for associational standing. Yet, this Court need not address associational standing if an individual plaintiff has standing to move forward. *Cope v. Parson*, 570 S.W.3d 579, 584 (Mo. banc 2019). Because plaintiffs Langlitz and Del Villar have individual standing and because the merits of these claims must be analyzed regardless of associational standing, this Court declines to analyze that issue.

SB 631 immediately expanded eligibility for absentee voting without notarization under section 115.277 for the remaining 2020 elections.[3] For voters who do not qualify for an absentee ballot, it also created no-excuse mail-in voting with the requirement that those voters obtain acknowledgment of their signature by a notary. With respect to absentee voting, SB 631 retained all the existing eligibility categories to vote absentee[4] set out in section 115.277 and added new sections 115.277.1(7) and 115.277.6 pertaining only to elections held in 2020.

Section 115.277.1(7) authorizes any voter who has "contracted or is in an at-risk category for contracting" COVID-19 to vote by absentee ballot *without* having their signatures on their ballot envelopes acknowledged by a notary or other official authorized by law to administer oaths. § 115.283.8; § 115.291.1. The legislature defined at-risk voters in the new section 115.277.6 as:

> For purposes of this section, the voters who are in an at-risk category for contracting or transmitting severe acute respiratory syndrome coronavirus 2 are voters who: (1) Are sixty-five years of age or older; (2) Live in a long-term care facility licensed under chapter 198; (3) Have chronic lung disease or moderate to severe asthma; (4) Have serious heart conditions; (5) Are immunocompromised; (6) Have diabetes; (7) Have chronic kidney disease and are undergoing dialysis; or (8) Have liver disease.

---

[3] Statutory references are to RSMo Supp. 2020 unless otherwise noted.

[4] These categories are: absence on election day from the jurisdiction of the election authority in which such voter is registered to vote; incapacity or confinement due to illness or physical disability, including a person who is primarily responsible for the physical care of a person who is incapacitated or confined due to illness or disability; religious belief or practice; employment as an election authority, as a member of an election authority, or by an election authority at a location other than such voter's polling place; incarceration, provided all qualifications for voting are retained; and certified participation in the address confidentiality program established under sections 589.660 to 589.681 because of safety concerns. § 115.277.1(1)-(6).

§ 115.277.6

SB 631 also created a new section 115.302.1 authorizing all registered Missouri voters, regardless of their eligibility to vote absentee pursuant to section 115.277, to cast a mail-in ballot in any remaining elections held in 2020 provided the ballot is acknowledged by a notary as provided in sections 115.302.11 and 115.291.1. These new voting provisions authorize all registered voters to vote by mail provided their signatures on the ballot envelopes are acknowledged by a notary or other person authorized to administer oaths.[5] The new absentee provision further authorized a subset of voters deemed at-risk by the statute to vote absentee by mail without such acknowledgement in the remaining 2020 elections.

In Appellants' appeal of the circuit court's dismissal, this Court remanded the case for further proceedings. *Mo. State Conf. of NAACP v. State*, 601 S.W.3d 241, 243 (Mo. banc 2020). Appellants then filed an amended petition and engaged in discovery seeking evidentiary support for their claims. After a trial on the merits, the circuit court entered judgment for the State on September 24, 2020. The circuit court found Count I, which presented a question of statutory interpretation, failed as a matter of law because Appellants who are not ill or disabled are not "confine[d] due to illness of disability" under the plain and ordinary meaning of section 115.277.1(2). As to Count II, which asserted the notarization requirement poses unconstitutional health risks, the circuit court found the

---

[5] In response to the COVID-19 pandemic, the legislature also passed House Bill No. 1655, which allows both electronic and remote online notarial acts. Each party suggests HB 1655 does not apply to absentee or mail-in ballots. Because of the parties' consensus, this Court declines to address the issue.

4

claim was unsupported by the law and evidence. Appellants appeal directly to this Court under this Court's exclusive appellate jurisdiction over cases involving the validity of a state statute pursuant to article V, section 3 of the Missouri Constitution.

## I. Interpretation of Section 115.277.1(2)

Appellants' first point on appeal challenges the circuit court's ruling that the plain and ordinary meaning of section 115.277.1(2) does not allow Missouri voters who expect to confine themselves to avoid spreading or contracting the COVID-19 virus to vote absentee without notarization. In Count I of their amended petition, Appellants allege section 115.277.1(2) "permits registered voters who expect to confine themselves on Election Day due to COVID-19 to vote absentee in Missouri without a notary seal."

The judgment in a court-tried case will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Statutory interpretation is an issue of law that this Court reviews *de novo.*" *State v. Richey*, 569 S.W.3d 420, 423 (Mo. banc 2019).

Section 115.277.1(2) allows voters to vote absentee if they are incapacitated or confining due to illness or disability or are caregivers for a person who is incapacitated or confining due to illness or disability. Specifically, section 115.277.1(2) provides:

> Except as provided in subsections 2, 3, 4, and 5 of this section, any registered voter of this state may vote by absentee ballot for all candidates and issues for which such voter would be eligible to vote at the polling place if such voter **expects** to be prevented from going to the polls to vote on election day due to: . . . (2) **Incapacity or confinement due to illness or physical disability, including a person who is primarily responsible for the**

5

**physical care of a person who is incapacitated or confined due to illness or disability . . . .**

§ 115.277.1(2) (emphasis added). Appellants argue this provision includes, in the context of the COVID-19 pandemic, voters who expect to confine themselves to home to avoid spreading or contracting COVID-19. Although none of the Appellants claim they expect to be ill on or have contracted COVID-19 by the date of the election, they argue they are, nevertheless, expecting to confine themselves "due to illness" as that phrase is used in section 115.277.1(2) and are, therefore, entitled to submit their absentee ballot by mail without notarization.[6]

The goal of statutory interpretation is to give effect to the General Assembly's intent "as reflected in the plain language of the statute at issue." *State v. Jones*, 479 S.W.3d 100, 106 (Mo. banc 2016) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014)). "The

---

[6] With some exceptions, absentee ballots may be submitted by mail. Section 115.291.2 provides absentee ballots shall be returned "by the voter in person, or in person by a relative of the voter who is within the second degree of consanguinity or affinity, [or] by mail or registered carrier . . . ."

Voters eligible to vote absentee because of incapacity or confinement due to illness or disability pursuant to section 115.277.1(2) are not required to have their ballots acknowledged by a notary. Section 115.291.1 provides:

> The affidavit of each person voting an absentee ballot shall be subscribed and sworn to before the election official receiving the ballot, a notary public or other officer authorized by law to administer oaths, **unless the voter is voting absentee due to incapacity or confinement** due to the provisions of section 115.284, illness or physical disability, for an election that occurs during the year 2020, [or] the voter has contracted or is in an at-risk category for contracting or transmitting severe acute respiratory syndrome coronavirus 2, as defined in section 115.277 . . . .

(Emphasis added).

6

primary rule of statutory construction is to ascertain the intent of the legislature from the language used [and] to give effect to that intent if possible[.]" *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). This Court does so by "consider[ing] the words used in their plain and ordinary meaning." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018).

Here, section 115.277.1(2) provides voters who "expect[] to be prevented from going to the polls to vote on election day due to . . . [i]ncapacity or confinement due to illness or physical disability" may request and cast an absentee ballot without notarizing their ballot envelope. Appellants argue this authorizes Missouri voters to vote absentee without notarization during the COVID-19 pandemic if they expect to confine themselves on election day to avoid spreading or contracting the virus. Essentially, Appellants contend voters who do not expect to be ill or disabled on the date of the election are, nonetheless, eligible to vote absentee because they have confined themselves to avoid "contracting or spreading" COVID-19. The plain and ordinary meaning of the language in the statute, however, does not support this application. In plain and ordinary speech, "confinement due to illness" does not refer to voluntarily remaining in one's own home to avoid "contracting or spreading" a pathogen. Webster's dictionary defines "illness" as "an unhealthy condition of body or mind," or meaning someone who is actually experiencing a diagnosis or symptoms and not the threat of such impact. *Illness*, Webster's New Int'l Dictionary 1127 (3d ed. 2002). Appellants' interpretation of this phrase requires reading the words "risk of" or "to avoid" illness into the statute. This Court's obligation is to examine the language used by the legislature, not to supply what the legislature omitted by

7

engrafting additional language into the statute. *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 668 (Mo. banc 2010); *Bd. of Educ. of City of St. Louis v. State*, 47 S.W.3d 366, 371 (Mo. banc 2001) ("[C]ourts cannot transcend the limits of their constitutional powers and engage in judicial legislation supplying omissions and remedying defects in matters delegated to a coordinate branch of our tripartite government."). Therefore, the phrase "confinement due to illness" connotes the situation of an individual who expects to be confined because of a developed and experienced health condition or sickness. This does not include an individual who expects to be confined to avoid the risk of contracting or spreading a pathogen.

Appellants ultimately seek to authorize an entirely new category of voters to vote absentee without notarization in direct contradiction of the legislature's clear intent as expressed in section 115.277.1(2). While Appellants argue their position is limited to the unique situation of the COVID-19 pandemic, the practical effect of Appellants' position is that any eligible voter who expects to voluntarily confine him or herself on the date of an election to avoid contracting or spreading any illness—from COVID-19 to the flu to the common cold—could cast an absentee ballot without notarizing his or her ballot envelope regardless of whether he or she expects to be sick or ill on the date of the election. All future voters beyond the 2020 election could claim they expect to confine themselves "due to illness" under Appellants' suggested interpretation of that phrase. This result is clearly contrary to the plain and ordinary meaning of this absentee provision.

Applying the ordinary, everyday meaning of the language in section 115.277.1(2) as this Court is required to do, the phrase "confinement due to illness" plainly refers to

8

individuals who are currently ill. *Dickemann*, 550 S.W.3d at 68. In no ordinary sense does the phrase "confinement due to illness" encompass voters who expect to voluntarily confine themselves at home to avoid "contracting or spreading" a virus, but who do not expect to be sick or ill. This Court should not second-guess the wisdom or policy of a legislative enactment. *State ex rel. Voss v. Davis*, 418 S.W.2d 163, 169 (Mo. 1967) (Courts may not "inquire into the motive, policy, wisdom, or expediency of legislation.").

The plain and ordinary meaning of the statute's language suffices to defeat Appellants' claims. However, Appellants' proffered interpretation of section 115.277.1(2) fails for another reason: this Court must presume the legislature did not enact meaningless provisions. *Dickemann*, 550 S.W.3d at 68. Appellants ignore this principle of statutory interpretation in two ways. First, Appellants' position disregards the second clause of section 115.277.1(2). After authorizing voters who expect to confine themselves due to illness to cast an absentee ballot without notarization, subdivision (2) goes on to authorize persons who expect to be "primarily responsible for the physical care of a person who is incapacitated or confined due to illness" to do so, as well. But, under Appellants' characterization of the phrase "due to illness," the first clause of subdivision (2) would already authorize those caregivers to cast an absentee ballot without notarization because their confinement would be "due to illness"—not their own illness, but the illness causing the confinement of the person for whom they are caring. Appellants' interpretation would render unnecessary and meaningless the statute's caregiver exception.

Second, Appellants' interpretation similarly would render the new subdivision (7) for absentee voting unnecessary and meaningless. That subdivision authorizes voters who

9

have "contracted **or [are] in an at-risk category for contracting** or transmitting severe acute respiratory syndrome coronavirus 2" to cast an absentee ballot without notarization. § 115.277.1(7) (emphasis added). Under Appellants' interpretation, however, subdivision (2) would already authorize at-risk voters who have not contracted the virus that causes COVID-19 but wish to avoid election polling stations to avoid contracting the virus to vote absentee without notarization. If the language of section 115.227.1(2) authorized those who expect to be confining themselves at home to avoid COVID-19 to vote absentee without notarization, the legislature would not have needed to expressly authorize at-risk voters to do so in SB 631.

Legislative changes to existing law are highly instructive as to a statute's meaning. *See Cox v. Dir. of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003). Here, the legislature's amendment of section 115.277 is not only telling—it is dispositive. The legislature enacting new subdivision (7) to authorize at-risk voters who had not yet contracted the virus that causes COVID-19 to vote absentee without notarization shows such voters *were not* previously authorized to do so under former section 115.277.1(2). Healthy, at-risk voters who wish to stay home to avoid contracting or spreading COVID-19 may be confining themselves, but they are not confined "due to illness" as that phrase is used in subdivision (2). If they were, the legislature would not have needed to enact subdivision (7).

## II. Constitutional Claims

In Count II of their amended petition, Appellants alleged enforcement of statutes that prevent all voters from casting an absentee ballot without acknowledgement by a

10

notary during the COVID-19 pandemic violates their fundamental right to vote under the Missouri Constitution. The circuit court found no violation of the state's constitution, and Appellants assert this holding was error. Whether a statute is unconstitutional is subject to *de novo* review. *Priorities USA v. State*, 591 S.W.3d 448, 452 (Mo. banc 2020).

Appellants argue the notary requirement for mail-in ballots, as applied in the context of a public health crisis when social-distancing is urged by health officials, constitutes a severe burden on their constitutional right to vote, triggering strict scrutiny. The State contends Appellants are not entitled to relief on their constitutional challenge because all absentee voting in Missouri "is clearly a privilege and not a right." *See, e.g.*, *Barks v. Turnbeau*, 573 S.W.2d 677, 681 (Mo. App. 1978). The State further argues that the mail-in voting authorized by SB 631 exceeds any constitutional requirement under article VIII, section 7; therefore, no level of scrutiny should apply.

Article I, section 25 declares "[t]hat all elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Article VIII, section 2 provides, in part, "All citizens of the United States … over the age of eighteen who are residents of this state and of the political subdivision in which they offer to vote are entitled to vote at all elections by the people . . . ." These provisions command that the right to vote is fundamental to Missouri citizens. *Weinschenk v. State*, 203 S.W.3d 201, 211 (Mo. banc 2006). Holding that the right to vote is fundamental, however, is a separate matter from determining whether *absentee* voting is a fundamental right.

11

Although the Missouri Constitution establishes that the right to vote is fundamental to Missouri citizens, the right to vote absentee does not enjoy such high status. Article VIII, section 7 of the Missouri Constitution empowers the legislature to authorize voting for those who are absent. Mo. Const. art VIII, sec. 7 ("Qualified electors of the state who are absent, whether within or without the state, may be enabled by general law to vote at all elections by the people."). Through the phrase "*may* be enabled," this constitutional provision confers on the legislature discretion to decide whether to allow Missouri citizens to vote absentee under circumstances as the legislature provides. *See State ex rel. Dresser Indus., Inc. v. Ruddy*, 592 S.W.2d 789, 794 (Mo. banc 1980) ("The plain and ordinary meaning of the word 'may' is permissive.").

The legislature exercised its constitutional authority by passing SB 631, which expanded absentee voting in Missouri in response to the COVID-19 pandemic. This statutory law created certain limitations with respect to a new mail-in voting system effective for 2020. As part of permitting voting away from a poll, the legislature may enact safeguards to protect the "privilege" of absentee voting. *See Straughan v. Meyers*, 187 S.W. 1159, 1164 (Mo. banc 1916); *Franks v. Hubbard*, 498 S.W.3d 862, 868 (Mo. App. 2016); *Barks*, 573 S.W.2d at 681. The legislature did so here with the notary requirement.

Appellants incorrectly contend that article VIII, section 7 has no bearing on the mail-in ballot statute. Appellants suggest section 7 is limited to "absentee voting" and has no impact on section 115.302, which addresses voting by a mail-in ballot. On the contrary, by its plain language, article VIII, section 7 applies to both absentee and mail-in ballots in that those seeking to cast their vote by a mail-in ballot are also "absent" from the polls. As

a result, restrictions placed on mail-in balloting do not violate the fundamental right to vote because mail-in balloting is not a fundamental right under the Missouri Constitution. The legislature had no obligation to allow mail-in or absentee balloting.

Although Appellants allege that the notarization requirement infringes on the fundamental right to vote, this Court has found that there is no constitutional right in Missouri to vote by absentee or mail-in ballot. The Missouri Constitution authorizes the legislature the discretion to allow those who are absent from the polls to vote, and the legislature has so provided by statute for more than 100 years.[7] In light of concerns raised by COVID-19, the legislature chose to put in place additional provisions allowing broader use of absentee ballots and temporarily permitting mail-in voting. The new absentee and mail-in ballot statutes do not affect the right of voters to go the polls to vote. Because Appellants have specifically stated that they do not challenge the new absentee and mail-in ballot statutes on any other constitutional ground, such as violating their due process or equal protection rights,[8] or that these provisions have a disparate impact on a

---

[7] The earliest statewide statute to address absentee voting appears to have been Laws 1917, pp. 274-75. It defines an absentee voter as "any employee of any railroad company, traveling salesmen, student in any college of the state, state officer, or other person, being a qualified elector" who is "unavoidably absent from the county in which he resides . . . because his duties, occupation or business require him to be elsewhere." Section 4751, RSMo 1919.

[8] Although Count II of the original petition alleged an equal protection violation on a different topic, Appellants abandoned that count before their first appeal.

protected class[9] or otherwise violate recognized constitutional rights, this Court rejects Appellants' constitutional claims.[10]

## Conclusion

The circuit court's judgment is affirmed.[11]


Russell, Powell, Breckenridge and Fischer, JJ., concur;
Wilson, J., concurs in separate opinion filed;
Stith, J., concurs in part and dissents in part in separate opinion filed
and concurs in part in opinion of Wilson, J.;
Draper, C.J., concurs in opinion of Stith, J.

---

[9] In fact, Appellants specifically disclaim the State's contention that they have set out a disparate impact claim.

[10] Moreover, even though Appellants allege in Count II various misconstruction or misapplication of certain mail-in and absentee voting statutes (e.g., claiming an abuse of discretion by the authorities providing guidance to voters as to the distinction between mail-in and absentee ballots, the question of whether a notary can charge for notarizing a mail-in ballot, and whether a seal is or should be required by regulations when a seal is not required as part of the statutory requirement for a notary acknowledgement), Appellants requested no relief concerning these allegations. The only relief requested was to have the notary requirement for mail-in and certain absentee ballot requests declared unconstitutional and enjoin their enforcement under article I, section 25 and article VIII, section 2 of the Missouri Constitution. Because Appellants sought no relief concerning their allegations that certain mail-in and absentee ballot statutes are being misconstrued or misapplied and because the Court holds that the constitutional provisions relied on by Appellants do not confer a fundamental right to vote absentee or by mail, the Court need not address these allegations further.

[11] Although parties normally have 15 days for filing post-disposition motions under Rule 84.17, in light of the impending election and in the interest of justice, this Court will not entertain any such motions in this case.

14



# SUPREME COURT OF MISSOURI
## en banc

MISSOURI STATE CONFERENCE ... )
OF THE NATIONAL ASSOCIATION )
FOR THE ADVANCEMENT OF ... )
COLORED PEOPLE, ET AL. ... )
                                   )
           Appellants,      )
                                     )
v.                                    )       No. SC98744
                                     )
STATE OF MISSOURI, ET AL.    )
                                     )
           Respondents.     )

### Concurring Opinion

I concur in the per curiam opinion's conclusion rejecting Appellants' claim that

section 115.277.1(2)[1] allows Missouri voters to cast an absentee ballot without

notarization if they expect to confine themselves (or at least not go to the polls) on

election day to avoid spreading or contracting the COVID-19 virus.[2] Senate Bill No. 631

---

[1] All statutory citations are to RSMo Supp. 2020 unless otherwise noted.

[2] I also concur in the per curiam opinion's conclusion rejecting Appellants' claim that the absentee and vote-by-mail provisions in Senate Bill No. 631 violate the constitutional right to vote found in article I, section 25 and article VIII, section 2 of the Missouri Constitution. As explained in the per curiam opinion, Appellants' claim fails for the simple reason that this constitutional right does not extend to vote-by-mail or absentee voting. Until the people amend their constitution to address this, the plain language of article VIII, section 7 permits no other conclusion. This is because article VIII, section 7 plainly leaves it to the legislature to decide

greatly expanded the alternatives to voting at the polls on election day – including, for the first time, giving every Missouri voter the right to vote by mail provided their ballot is returned in a notarized envelope – but it did not expand the opportunity to cast an absentee ballot without notarization as far as Appellants contend. Perhaps it should have done, for the persuasive policy reasons set forth in the dissenting opinion, but this Court's role is to construe the law that was passed, not to lament the laws that were not passed. In sections 115.277.1(7) and 115.277.6, SB 631 limits the expansion of the right to cast an absentee ballot without notarization only to certain categories of voters, and the plain language of section 115.277.1(2) falls far short of extending that right to everyone who fears (though with good reason) contracting or spreading COVID-19 by voting at the polls this November.

I write separately, however, to point out that – in their haste to advocate a new and much expanded construction of section 115.277.1(2) – Appellants overlook the substantial number of voters who presently benefit from the plain language of that statute. Section 115.277.1(2) provides that any Missouri voter may cast an absentee ballot without notarization if he or she "expects to be prevented from going to the polls to vote on election day due to … (2) Incapacity or confinement due to illness or physical

---

"by general law" whether to allow alternatives to voting at the polls on election day and, if so, what alternatives should be allowed and under what conditions. Even though Appellants' "right-to-vote" claims fail, laws enacted pursuant to article VIII, section 7, including Senate Bill No. 631, nevertheless must comply with the constitutional provisions that govern all general laws, e.g., the guarantees of equal protection and due process and the prohibition against special laws. Appellants, however, failed to challenge Senate Bill No. 631 under any of these provisions of the constitution, and the Court expresses no opinion as to whether one or more of such challenges would have had merit.

disability," as well as anyone who is the primary caregiver for such a person. Appellants devote all their attention to the phrase "due to illness," in effect arguing that this phrase should be read to mean "due to having – or to the fear of contracting or spreading – illness." As explained in the per curiam opinion, this argument defies the plain language of this phrase.

But Appellants overlooks the breadth of the plain language of section 115.277.1(2) and the extent to which it inarguably extends the right to cast an absentee ballot without notarization. The key to this statute is the word "*expects*," not the phrase "due to illness." To be eligible to cast an absentee ballot without notarization under section 115.277.1(2), a Missouri voter need only "expect" to be unable to vote at the polls on election because he or she "expects" to have COVID-19 (i.e., be "incapacitated") or to be required to quarantine on account of being exposed to that virus (i.e., be "confined") on November 3, 2020. Eligibility under section 115.277.1(2) does not depend on whether the voter actually *is* incapacitated or confined on election day due to COVID-19. Instead, it depends on whether the voter "expects" – weeks before election day, when they apply for an absentee ballot – that they *will be* incapacitated or confined on election day due to COVID-19.[3] Nothing in section 115.277.1(2) requires that this incapacity or confinement be likely or that the voter's expectation otherwise be reasonable. The only

---

[3] Notably, Missouri law anticipates that a voter who did not "expect" to be incapacitated or confined due to an illness such as COVID-19 and, therefore, did not vote absentee on that basis, may find themselves incapacitated or confined due to illness after the ordinary deadline to apply for an absentee ballot has passed. If this happens, the local election authority "shall appoint a team to deliver, witness the signing of and return the voter's application and deliver, witness the voting of and return the voter's absentee ballot." § 115.287.2, RSMo Supp. 2018.

requirement is that the voter genuinely, but entirely subjectively, ***have*** such an expectation at the time he or she applies for the absentee ballot.[4]

Many Missouri voters intuitively understand this requirement in the context of section 115.277.1(1), which provides that a Missouri voter may apply for and cast an absentee ballot if he or she "expects to be prevented from going to the polls to vote on election day due to: (1) Absence on election day from the jurisdiction of the election authority in which such voter is registered to vote[.]"  No one would suggest that voters are only eligible to cast an absentee ballot if they are certain they will be absent on election day, or that their expectation of absence needs to be objectively reasonable, and no one would suggest that such an absentee ballot should be rejected if it turns out that the voter is not absent from the jurisdiction on election day.  Instead, Missouri voters understand that the plain language of section 115.277.1(1) makes them eligible if, at the time they apply for an absentee ballot, they genuinely – but entirely subjectively – "expect" to be absent on election day.

In the same way, section 115.277.1(2) makes any Missouri voter eligible to cast an absentee ballot without notarization if, at the time that voter applies for an absentee ballot, he or she genuinely – but entirely subjectively – "expects" to be incapacitated or

---

[4]   To be clear, the voter must genuinely have this expectation.  A voter should not feign such an expectation any more than a voter should feign an expectation he or she will be absent on election day.  But the voter need only state that he or she has this expectation when applying for the absentee ballot rather than both then and on the day the absentee ballot is returned.  *See* § 115.294, RSMo. 2016 ("Other provisions of law to the contrary notwithstanding, no absentee ballot shall be rejected for failure of the voter to state on the ballot envelope his reason for voting an absentee ballot.").

confined on election day due to having (or being required to quarantine as a result of being exposed to) COVID-19.  It does not matter – at the time the voter applies for the absentee ballot – how objectively likely or unlikely this is to happen.  And it does not matter whether – on election day – it actually happens.  All that matters is whether the voter genuinely – but entirely subjectively – "expects" it will happen at the time he or she applies for an absentee ballot.

The circumstances at the time of this writing suggest that many Missouri voters, including many of the voters whose interests Appellants have tried to protect, may have such an expectation.  Missouri has had little success in curbing the spread of COVID-19.  In March and April, state and local "stay at home" orders were imposed when the number of new cases rose to 100 or 200 per day.  Such measures are long gone today, however, even though now we regularly have more than 1,500 new cases each day and – all too often – that number exceeds 2,000 per day.  Altogether, more than 140,000 Missourians have contracted COVID-19 and more than 2,300 of them have died.  There is no sign that these trends will slow, let alone reverse themselves.  By election day, the total number of cases likely will exceed 160,000, and the total number of deaths likely will exceed 3,000.

To be sure, the choices that needed to be made in response to this pandemic, by state and local leaders and by every Missourian individually, were (and continue to be) difficult.  The results of the decisions made to date, however, are plain for all to see.  The numbers speak for themselves.  In the face of these conditions, therefore, it would be easy to understand if a voter were to apply for an absentee ballot on the ground that he or she genuinely "expects" to be incapacitated or confined and unable to vote on election day

5

due to having (or having been exposed to) COVID-19. In the very few days remaining to apply for absentee ballots, Appellants' efforts may yield better fruit informing voters what section 115.277.1(2) plainly does say rather than litigating over what it plainly does not say.

_____
Paul C. Wilson, Judge



# SUPREME COURT OF MISSOURI
## en banc

MISSOURI STATE CONFERENCE  )
OF THE NATIONAL ASSOCIATION)
FOR THE ADVANCEMENT OF     )
COLORED PEOPLE, ET AL.,      )
                                   )
        Appellants,          )
                                   )
v.                              )          **No. SC98744**
                                   )
STATE OF MISSOURI, ET AL.,     )
                                   )
        Respondents.      )

### Opinion Concurring in Part and Dissenting in Part

I concur in the portion of the per curiam opinion holding that, although the right to vote absentee has been held by Missouri's citizens for more than a century, that right is based on statute rather than on any provision in Missouri's constitution guaranteeing the right to vote absentee. A Missouri constitutional guarantee of the right to vote absentee is the premise of most of the allegations of Count II. Count II does not assert that the absentee and mail-in voting statutes are unconstitutional on other grounds such as violations of equal protection or that they have a discriminatory impact. As the remaining allegations in Count II concern misapplication of Missouri's statutes rather

than the constitutional validity of those statutes, I concur in affirming the denial of Count II.

I dissent from the portion of the per curiam opinion affirming dismissal of Count I on the basis that the right to vote absentee under section 115.277.1(2)[1] is limited in its application solely to those who expect to be confined due to their own illness, although I agree with the concurring opinion that the number of voters who have such an expectation may be large indeed due to the prevalence of the virus and the current failure to contain it. Both the per curiam and concurring opinions are incorrect in stating section 115.277.1(2) does not also apply to persons, such as plaintiffs Javier Del Villar and Meredith Langlitz, who do not expect to be ill on election day but wish to vote absentee without notarization under section 115.277.1(2) because they expect to confine themselves on election day due to the prevalence of COVID-19. I would hold Mr. Del Villar and Ms. Langlitz are correct the statute encompasses them and, therefore, provides them with the ability to vote absentee without notarization.[2]

### STATUTORY INTERPRETATION OF SECTION 115.277.1(2)

As amended in 2020 by the legislature in Senate Bill No. 631 by the addition of subdivision (7), section 115.277.1 provides, in relevant part:

115.277 Persons eligible to vote absentee — *at-risk category defined*. —

1. Except as provided in subsections 2, 3, 4, and 5 of this section, any registered voter of this state may vote by absentee ballot for all candidates and issues for which such voter would be eligible to vote at the polling

---

[1] Statutory references are to RSMo Supp. 2020 unless otherwise noted.
[2] Because the claims of Mr. Del Villar and Ms. Langlitz are ripe, there is no need to reach the issue of organizational standing.

place **if such voter expects to be prevented from going to the polls to vote on election day** due to:

    (1)  Absence on election day from the jurisdiction of the election authority in which such voter is registered to vote;

    **(2)  Incapacity or confinement due to illness or physical disability,** including a person who is primarily responsible for the physical care of a person who is incapacitated or confined due to illness or disability;

    (3)  Religious belief or practice;

    (4)  Employment as an election authority, as a member of an election authority, or by an election authority at a location other than such voter's polling place;

    (5)  Incarceration, provided all qualifications for voting are retained;

    (6)  Certified participation in the address confidentiality program established under sections 589.660 to 589.681 because of safety concerns; or

    *(7) For an election that occurs during the year 2020, the voter has contracted or is in an at-risk category for contracting or transmitting severe acute respiratory syndrome coronavirus 2. This subdivision shall expire on December 31, 2020.*

*…*

*6. For purposes of this section, the voters who are in an at-risk category for contracting or transmitting severe acute respiratory syndrome coronavirus 2 are voters who:*

  *(1) Are sixty-five years of age or older;*

  *(2) Live in a long-term care facility licensed under chapter 198;*

  *(3) Have chronic lung disease or moderate to severe asthma;*

  *(4) Have serious heart conditions;*

  *(5) Are immunocompromised;*

  *(6) Have diabetes;*

  *(7) Have chronic kidney disease and are undergoing dialysis; or*

  *(8) Have liver disease.*

(Language added by SB 631 italicized; language concerning confined voters bolded).

A careful reading of section 115.277.1(2)'s plain language governing the right to vote absentee demonstrates its broad intendment. As the per curiam opinion notes, it is written from the point of view of the voter, not the election authorities. It premises the right to vote absentee not on whether a person is or is not able physically to vote in

3

person on election day—one could hardly know that in advance in all cases—but on whether the voter "*expects to be prevented from going to the polls due to … [i]ncapacity or confinement due to illness or physical disability*." *§ 115.277.1(2)* (emphasis added).

Given the current state of the COVID-19 pandemic in Missouri as recognized by the legislature in its enactment of subdivision (7) permitting expanded absentee balloting due to that illness, and as continuing to this day, fewer than four weeks prior to the election,[3] any Missourian could reasonably expect to be confined or incapable of going to the polls on election day because they expect they will be asked or required to quarantine, or they expect they will have contracted COVID-19, or they expect they will be showing symptoms of COVID-19. This expectation of incapacity or confinement brings the voter under the ambit of section 11.5.277.1(2) and permits the voter to vote absentee. In this, the per curiam opinion and I agree.

I would also hold that, even if individual voters do not expect to be unable to go to the polls physically themselves on election day due to COVID-19, they may nonetheless confine themselves due to the prevalence of that illness in the community. Those voters also, I believe, fall within section 115.277.1(2) regardless of whether they are personally ill. The per curiam opinion rejects this interpretation of the statute, holding the provision applies only to persons who are confining themselves due to their own illness or because they are a caregiver for one who is so confined. Surely, the per curiam opinion posits, the

_____

[3] *See COVID-19 in Missouri, https://showmestrong.mo.gov/data/public-health/* (last visited October 9, 2020) (noting more than 8,700 new cases of coronavirus between September 30, 2020, and October 6, 2020; Missouri ranked seventh in the nation for the number of new cases during that week).

4

legislature could not have intended the language also to include persons who were confining themselves at home due to a pandemic the legislature could not have anticipated.

But a review of the statutory history of section 115.277.1(2) shows—to the contrary—that while the legislature may not have anticipated this particular pandemic, it did anticipate there might be multiple reasons why an elector might need to vote absentee other than the elector's own illness.

As noted by the per curiam opinion, the earliest statewide statute to address absentee voting appears to have been Laws 1917, pp. 274-75. It defines an absentee voter as "any employee of any railroad company, traveling salesmen, student in any college of the state, state officer, or other person, being a qualified elector" who is "unavoidably absent from the county in which he resides ... because his duties, occupation or business require him to be elsewhere." *§ 4751, RSMo 1919*; *see also § 10181, RSMo 1929* (same). This language left it to the individual elector to determine whether the elector's business or studies required voting absentee. The category of those who could vote absentee was later simplified in 1939 to include a qualified elector who "expects in the course of his business or duties to be absent from the county in which he is a qualified elector." *§ 11470, RSMo 1939*. In neither of these statutes was illness a factor.

It appears an absentee voting statute specifically mentioning illness was first adopted in 1944. For the first time, like the current statute, it based the right to vote absentee on the voter's expectation of being unable to go to the polls. But, unlike the

5

current statute, it specifically required the one seeking to vote absentee to ***personally*** be prevented from going to the polls, stating:

> any ... qualified elector ... who expects to be absent ... or any person *who through illness or physical disability* **expects to be prevented from personally** *going to the polls ....*

*§ 112.010, RSMo 1949 (Laws 1944, p. 18)* (emphasis added). This language remained the same in section 112.010, RSMo 1959, and section 112.010, RSMo 1969.

Then, in 1982, the legislature chose to *remove* the language requiring the voter to personally be prevented from going to the polls due to illness and, instead, changed the focus to whether the elector "expects to be prevented from going to the polls" due to "incapacity or confinement due to illness or physical disability." *See SB 526, codified at § 115.277, RSMo 1986*. This is the same language that is found in section 115.277, RSMo 2016.

In other words, the predecessor to section 115.277.1(2), RSMo 2016, stated that the elector had to expect to personally be prevented from going to the polls, but the legislature chose to remove that language and instead insert the current language merely requiring the elector to expect to be confined due to illness, without any requirement that it be a personal illness. Yet we know the legislature knew how to so limit an absentee voting provision, for it did so in section 112.010 that it adopted in 1944.

While the per curiam opinion suggests the current legislature could not have so intended, it is what the legislature intended when the language was adopted that is relevant.

In any event, the current legislature could have, but failed to, revise this language when it adopted SB 631. Although that bill added section 115.277.1(7), which expressly states that it applies only if "**the voter** has contracted or is in an at-risk category for contracting or transmitting severe acute respiratory syndrome coronavirus 2 [COVID-19]," the legislature chose to leave the much broader and more passive language of subsection 115.277.1(2) in place.[4] (Emphasis added). This language, and the legislature's choice to leave it unchanged, means subdivision (2) comprehends those who, while not themselves ill, are nonetheless confining themselves due to illness, such as COVID-19.[5]

Even were this not the legislature's intent in adopting this language, statutes are not limited in their application to the events that led to their adoption. Once enacted, they become law and apply to all scenarios that come within their ambit; this is true, of course, even if, at the time of enactment, one might not have predicted all of the factual situations to which the statute might reach. Or, as Justice Scalia proverbially wrote in a case holding that anti-discrimination provisions were so broadly written as to apply to same-sex discrimination even if that was not what was in the legislators' minds when first adopted, "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.,*

---

[4] Similarly, section 115.277.6 defines "voters who are in an at-risk category" as voters who are themselves 65 or older or who have certain medical conditions.

[5] While the per curiam opinion suggests this interpretation of "confinement due to illness" gives no meaning to the subsequent phrase permitting the caregiver for an ill voter to also vote absentee, this is not the case. Because of the inclusion of this phrase,

7

*523 U.S. 75, 79 (1998).*[6]  The language used in any statute as adopted must be applied to issues that come before the courts.  The legislature is always free to revise the language of a statute if it now believes fewer—or more—categories of persons should come within its scope.  Until that occurs, however, the statutory language should be applied as written.  This includes section 115.277.1(2).

The per curiam opinion also suggests that, were this Court to interpret section 115.277.1(2) as now suggested, no purpose would have been served by adoption of the new section 115.277.1(7), allowing persons at risk of COVID-19 (which the statute refers to as "coronavirus 2") to vote absentee without notarization, for they already could do so under section 115.277.1(2).  And, as the per curiam opinion correctly notes, this Court presumes the legislature would not undertake a pointless act.

But the per curiam opinion's argument is based on the false premise that section 115.277.1(2) and section 115.277.1(7) are co-extensive, when they are not.  New section 115.277.1(7) applies only to those voters who fall within an "at-risk category" as defined in section 115.277.6.  That "at-risk" group is broader than section 115.277.1(2) because it includes all those who are in these at-risk categories, whether or not confining themselves

---

caregivers can vote absentee even when they are not otherwise confining themselves due to their patient's illness.  Without this ending phrase, that would not be the case.

[6] This principle is applicable, for example, when determining the application of the Copyright Act of 1976, written before the invention and ubiquitous use of the worldwide web, *see, e.g., Am. Broad. Cos., Inc. v. Aereo, Inc., 573 U.S. 431, 436 (2014)* (finding a company "performed" copyrighted works "publicly" in violation of the act by selling a service allowing customers to watch copyrighted television programs over the internet), or when interpreting the application of the Sherman Antitrust Act, passed in 1890, to professional sports.  Few likely would have predicted the act's application to football

at home due to COVID-19.  It is also narrower than section 115.277.1(2) because it does not apply to persons, such as plaintiffs Del Villar and Langlitz in this case, who are not in an at-risk category but who nonetheless are confining themselves at home due to COVID-19.  It also does not apply to obese persons, despite the fact that such persons are categorized as being in the seriously at-risk category by the Centers for Disease Control and Prevention and by this Court in its Operational Directives governing the operation of the courts during the pandemic.[7]

While the persons subject to section 115.277.1(2) and section 115.277.1(7) will overlap, the legislature often adopts overlapping exemptions and provisions in statutes as it tries to tackle issues from different vantage points.  Missouri courts recognize that, in such cases, the statutes should be read *in pari materia* and Missourians are free to utilize either statute.

For example, in *Director of Revenue v. Westinghouse Credit Corp., 787 S.W.2d 715 (1990)*, the director argued that, because one statute provided a method of seeking a refund, a taxpayer could not use another statute to seek a refund.  In rejecting this argument, this Court stated that, because neither method of obtaining a refund is "delineated an exclusive remedy," it saw "no reason to interpret either provision as the

_____

when originally adopted, but it applied nonetheless.  *See, e.g., Radovich v. Nat'l Football League, 352 U.S. 445, 452 (1957)*.

[7] *Operational Directives Effective May 16, 2020 at 5 n.1 (Mo. banc May 4, 2020), available at https://www.courts.mo.gov/file.jsp?id=156093*; *see also Groups at Higher Risk for Severe Illness, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#severe-obesity* ("[O]besity, defined as a body mass index (BMI)" of 30 or above, "increases your risk of severe illness from COVID-19.").

9

sole avenue available to the taxpayer here." *Id. at 717.* Further, this Court noted, "the taxpayer is availing itself of a plainly tendered statutory remedy, and cannot be faulted for failing to seek an alternate statutory remedy which the legislature has provided, though the Director deems it preferential." *Id. at 718.* The reasoning of this and similar cases is directly applicable here.[8]

The per curiam opinion finally suggests it nonetheless is just unreasonable to interpret the language "due to confinement due to illness" to apply to persons who do not expect to be themselves ill. But many of the other provisions of section 115.277.1 apply to persons who do not expect to be themselves ill, but who would have difficulty voting in person because they expect to be out of town, they have an important job related to the election, or they have a religious belief that keeps them from voting. It is easily as reasonable for the legislature to have adopted a provision allowing persons who are not themselves ill to vote absentee if they are confining themselves at home due to an illness that all concede they could transmit or contract if they were to vote in person.

Missouri certainly would not be alone were it to interpret section 115.277.1(2) to apply to those who are confined due to the COVID-19 illness but who are not themselves

---

[8] *See also, e.g., State v. Holmes, 399 S.W.3d 809 (Mo. banc 2013)* (holding that, when the legislature made lack of good cause an element of the State's charge of failure to support and also made proof of good cause an affirmative defense, this Court would give effect to both provisions and allow the issue to be raised as an affirmative defense); *Stanton v. Leonard, 130 S.W.2d 487 (Mo. 1939)* (holding that, when one statute provided a widow with the ability to claim dower and another with the ability to claim homestead rights, the widow did not have to choose and could take advantage of both overlapping statutes); *City of Springfield v. Stevens, 216 S.W.2d 450 (Mo. banc 1949)* (finding an ordinance did not conflict with a state statute when both addressed intoxicating liquors but the ordinance enlarged on the matters governed by the statute).

ill. Numerous other states that have provisions expressly limiting absentee voting to those who are ill or disabled have nonetheless found those statutes apply to permit their citizens to vote absentee in this time of COVID-19.

Indeed, West Virginia has a statute similar to Missouri's.[9] West Virginia adopted an emergency regulation providing that, in light of the COVID-19 crisis, "confined" means "a person who is restricted to a specific location for reasons beyond that person's control, including a recommendation by state or federal authorities for the person to self-quarantine, avoid public places or contact with other persons." *W. Va. Code St. R. § 153-53-2*; *see also W. Va. Sec'y of State Mac Warner, Admin. Law Div., Notice Of An Emergency Rule (Mar. 20, 2020), https://bit.ly/2zbwRO3*. The regulation could not so interpret the statutory language unless it was a reasonable interpretation of that language.

Other states have similarly interpreted their absentee voting laws. For instance, Delaware, by executive order, proclaimed that, in light of COVID-19, "the qualification of 'sick or physically disabled' as used in [the absentee voting statutes] shall apply to and include any such voter who is asymptomatic of COVID-19 infection and otherwise abiding by CDC and DPH guidelines by exercising self-quarantine or social distancing to avoid potential exposure to (and community spread of) COVID-19[.]"[10]

---

[9] Section 3-3-1(b) of the West Virginia Code provides that a qualified voter can vote absentee if the person "*is confined to a specific location and prevented from voting in person throughout the period of voting in person because of: (A) Disability, illness, injury, or other medical reason*[.]" (Emphasis added).

[10] *Sixth Modification of the Declaration of a State of Emergency for the State of Delaware Due to a Public Health Threat (March 24, 2020),* https://governor.delaware.gov/wp-content/uploads/sites/24/2020/03/Sixth-Modification-to-State-of-Emergency-03242020.pdf.

11

The secretary of state and attorney general of New Hampshire likewise provided guidance to local election officials that, with respect to statutes allowing persons to vote absentee due to a disability, it is reasonable to interpret the term "disability" to include those who wish to vote absentee to avoid contracting or spreading COVID-19, stating:

> In light of the current public health advisories related to COVID-19, any voter who in the voter's judgment is being advised by medical authorities to avoid going out in public, or to self-quarantine, would qualify to vote by absentee ballot. This applies equally to voters who are experiencing symptoms of COVID-19 or any other severe communicable flu, and those who are self-quarantining as a preventative measure. As the law does not define the term "disability" for the purpose of absentee voting, particularly in light of this guidance, any voter's reasonable determination that he or she qualifies satisfies the law.[11]

Other states have adopted similar rules or regulations.[12]  Whether adopted by the legislature, rule, or executive order, these are the official interpretations in each state of the meaning of that state's statutory provisions relating to absentee voting due to illness or disability, and each of these states has said this includes an inability to vote in person due to COVID-19.  The same rationale applies to Missouri's statute, which is even more

---

[11] *See, e.g., Memorandum of William M. Gardner, Secretary of State & Gordon J. MacDonald, Attorney General to New Hampshire Election Officials (April 10, 2020), https://www.nhpr.org/sites/nhpr/files/202004/covid-19_elections_guidance.pdf* (explaining that "[c]annot vote in-person by reason of disability" "includes a voter who is quarantined, including self-quarantine, for any reason due to COVID-19. Compliance with general medical advice issued to the public by health officials is sufficient, individualized advice from the voter's personal physician is not required.").

[12] *See, e.g., Conn. Exec. Order No. 7QQ (May 20, 2020), https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7QQ.pdf* (providing a person who is unable to appear in person to vote is qualified to vote absentee under the provision allowing absentee voting due to "sickness" if there is no federally approved and widely available vaccine for COVID-19).

explicit that confinement due to illness—not merely experiencing illness oneself—is a valid reason to vote absentee under section 115.277.1(2).

For these reasons, I would hold that section 115.277.1(2) applies to all those who expect to be confined due to illness as well as to those who are confining themselves so as to avoid spreading or contracting COVID-19 and, therefore, will be unable to vote in person in the November 2020 election. These persons should be permitted to vote absentee without notarization regardless of whether they fall within an at-risk category set out in section 115.277.6.

_____

**LAURA DENVIR STITH, JUDGE**
